UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| RONALD CALZONE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.4:15-cv-869 SNLJ |
| | ) | |
| CHRIS KOSTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

Plaintiff Ronald Calzone brings this lawsuit against defendants Chris Koster, in his official capacity as Attorney General for the State of Missouri, J. Bret Johnson, in his official capacity as Superintendent of the Missouri State Highway Patrol, and Jeremiah W. Nixon, in his official capacity as Governor of the State of Missouri. Plaintiff claims that § 304.230 RSMo is unconstitutional. The parties have filed cross motions for summary judgment.

I. **Factual Background**

The facts of this matter are uncontested except where indicated.

Plaintiff Calzone was pulled over by a member of the Missouri State Highway Patrol and detained for more than an hour because the officer did not recognize the truck or the markings displayed on the vehicle Calzone was driving. At the time, plaintiff was driving a dump truck that he uses to support his cattle and horse ranch. The truck has Missouri-issued 54,000 lb. local commercial vehicle license plates, and plaintiff has a

1

valid Missouri-issued commercial driver's license.  Plaintiff's "local" license plates mean that his truck's operations are limited to within fifty miles of his home, and his truck is subject to biannual inspections made at inspection stations authorized by the Missouri State Highway Patrol.

On June 3, 2013, plaintiff took his truck for a successful inspection and also secured his annual registration for the truck, and he also took the truck out to gather gravel for use in his daughter's chicken coop.  At 12:45 p.m. that same day, Corporal J.L. Keathley of the Missouri State Highway Patrol saw Calzone driving on U.S. Highway 63 in Phelps County, Missouri, and pulled him over.  The bed of plaintiff's truck was empty at that time, and it was well within the applicable height, length, and width restrictions for the road on which he was traveling.

Corporal Keathley told plaintiff that he pulled him over because he "did not recognize the truck or the markings displayed on the vehicle."  Keathley asked to inspect the truck, as he intended to perform a Level II inspection under the North American Standard Inspection ("NASI") program, but plaintiff refused and told him he believed the stop was unconstitutional.  Keathley then explained that § 304.230 RSMo authorizes the Missouri State Highway Patrol officers to stop commercial vehicles and inspect them whether or not the officer has probable cause to believe a law is being violated.  Plaintiff still refused to consent to inspection.  Keathley sought and received approval to conduct a motor fuel tax evasion check to see if plaintiff was using dyed motor fuel based on plaintiff's statement to Keathley that he (plaintiff) was "a hard-headed constitutionalist." The test showed that plaintiff was not using illegal dyed fuel.  Plaintiff says he consented

2

to the test only because Keathley told plaintiff that refusing the test would have "serious consequences with the state and the Internal Revenue Service." Keathley issued plaintiff a citation for refusal to submit to a commercial motor vehicle inspection and then allowed plaintiff to resume driving at 1:56 p.m..

The Phelps County prosecutor initially pursued a conviction against plaintiff for refusing to submit to the commercial motor vehicle inspection, but the prosecution was terminated by *nolle prosequi* on April 4, 2014.

Plaintiff filed this lawsuit against defendants on June 3, 2015, bringing two counts:

> **Count I** is for a declaratory judgment that § 304.230 RSMo is unconstitutional under the Fourth Amendment, Fourteenth Amendment, and Mo. Const. Art. I, § 15.
>
> **Count II** is for a declaratory judgment that Corporal Keathley violated plaintiff's rights under the Fourth and Fourteenth Amendments by applying § 304.230 RSMo to seize plaintiff on June 3, 2013.

The parties have filed cross-motions for summary judgment. Notably, plaintiff now states that he challenges the constitutionality of only subsections 1, 2, and 7 of § 304.230.

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(a), a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## III. The Challenged Statute and Related Statutes

Section 304.230 is titled "Enforcement of load laws---commercial vehicle inspectors, powers." Plaintiff challenges the constitutionality of §§ 304.230.1, 304.230.2,

and 304.230.7 (the "Challenged Subsections").

**Section 304.230.1** authorizes members of the Missouri state highway patrol to "conduct random roadside examinations or inspections" and to require a driver to "stop, drive, or otherwise move" a vehicle "to a location to determine compliance with sections 304.170 to 304.230," explicitly stating that this authority exists "with or without probable cause to believe that the size or weight [of the vehicle] is in excess of that permitted by sections 304.170 to 304.230."[1]

**Section 304.230.2** states that "any highway patrol officer is hereby given the power to stop any such conveyance or vehicle as above described upon the public highway for the purpose of determining whether such vehicle is loaded in excess of the provisions of sections 304.170 to 304.230."

**Section 304.230.7** states that the

> superintendent may also appoint members of the patrol who are certified under the commercial vehicle safety alliance with the power to conduct commercial motor vehicle and driver inspections and to require the operator of any commercial vehicle to stop and submit to said inspections to determine compliance with commercial vehicle laws, rules, and regulations, compliance with the provisions of sections 303.024 and 303.025, and to submit to a cargo inspection when reasonable grounds exist to cause belief that a vehicle is transporting hazardous materials as defined by Title 49 of the Code of Federal Regulations.

Notably, the Missouri State Highway Patrol participates in the commercial vehicle safety alliance ("CVSA") referred to in Subsection 7 of the statute. The CVSA sets the

---

[1] Sections 304.170 to 304.230 RSMo relate to size and weight limits imposed on commercial vehicles.

standards in association with the goal to promote commercial vehicle safety and security through uniformity, compatibility, and reciprocity of commercial vehicle inspections and enforcement throughout North America. The CVSA, along with the Federal Motor Carrier Safety Administration, administers the North American Standard Inspection ("NASI") program. Missouri state troopers performing random searches of commercial vehicles do so in accordance with the procedures stated in the NASI program. Here, Corporal Keathley is a Commercial Vehicle enforcement trooper who is certified to conduct such inspections for the Missouri Highway Patrol. Critically, Subsection 7 is distinguishable from Subsections 1 and 2 because any Missouri Highway Patrol officer may conduct a stop under Subsections 1 and 2, but only certified officers (such as Corporal Keathley) may conduct stops and inspections under Subsection 7.

## IV. Discussion

The parties have moved for summary judgment on both Counts I and II.

### A. Count I: Constitutionality of §§ 304.230.1, 304.230.2, 304.230.7

Plaintiff's Count I claims that the Challenged Subsections are facially invalid, which requires plaintiff to establish that no set of circumstances exists under which the statute would be valid. *United States v. Salerno*, 481 U.S. 739, 745 (1987). Here, plaintiff contends the statute is invalid because it allows suspicionless searches and seizures in violation of the Fourth Amendment.

The Fourth Amendment of the United States Constitution prohibits unreasonable searches and seizures both in private and commercial contexts, but the business owner's expectation of privacy is "different from, and indeed less than, a similar expectation in an

5

individual's home." *New York v. Burger*, 482 U.S. 691, 700 (1987) (citing *Donovan v. Dewey*, 452 U.S. 594, 598-99 (1981)). "This expectation is particularly attenuated in commercial property employed in 'closely regulated' industries." *Id.* Indeed, "[c]ertain industries have such a history of government oversight that no reasonable expectation of privacy…could exist for a proprietor over the stock of such an enterprise." *Id.* (quoting *Marshall v. Barlow's, Inc.*, 436 U.S. 307, 313 (1978) (internal citation omitted)). Such "closely regulated" industries include liquor sales, firearms dealing, mining, and running an automobile junkyard. *See id.* (automobile junkyards); *Donovan*, 452 U.S. at 606 (mines); *Colonnade Corp. v. United States*, 397 U.S. 72 (1970) (liquor); *United States v. Biswell*, 406 U.S. 311 (1972). In such closely regulated industries, warrantless searches are constitutional if three criteria are met:

> (1) "there must be a 'substantial' government interest that informs the regulatory scheme pursuant to which the inspection is made";
>
> (2) "the warrantless inspections must be necessary to further the regulatory scheme"; and
>
> (3) "the statute's inspection program, in terms of the certainty and regularity of its application, must provide a constitutionally adequate substitute for a warrant… In other words, the regulatory statute must perform the two basic functions of a warrant: it must advise the owner of the commercial premises that the search is being made pursuant to the law and has a properly defined scope, and it must limit the discretion of the inspecting officers."

*Burger*, 482 U.S. at 702-03 (internal quotations and citations omitted).

Defendants contend that commercial trucking is a closely-regulated industry and that the *Burger* three-part test thus applies. Indeed, at least the First, Fifth, Sixth, Eighth, Ninth, and Tenth Circuits have concluded that commercial trucking is a closely- or

6

pervasively- regulated industry. *United States v. Maldonado*, 356 F.3d 130, 135 (1st Cir. 2004); *United States v. Castelo*, 415 F.3d 407, 410 (5th Cir. 2005); *United States v. Fort*, 248 F.3d 475, 480 (5th Cir. 2001); *United States v. Dominguez–Prieto*, 923 F.2d 464, 468 (6th Cir.1991); *United States v. Mendoza–Gonzalez*, 363 F.3d 788, 794 (8th Cir. 2004); *United States v. Delgado*, 545 F.3d 1195, 1201 (9th Cir. 2008); *United States v. Mitchell*, 518 F.3d 740, 751 (10th Cir. 2008).

Those cases, however, predate the United States Supreme Court's pronouncement in *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2454-55 (2015), that the "closely regulated industry" label is a "narrow exception" and holding that the hotel industry did not constitute such an industry. The Court emphasized that in 45 years, it "has identified only four industries that have such a history of government oversight that no reasonable expectation of privacy could exist," and that "[s]imply listing these industries refutes petitioner's argument that hotels should be counted among them." *Id.* at 2454 (internal quotation omitted).

Plaintiff suggests that the trucking industry --- despite the significant number of Circuit Courts declaring otherwise --- is not closely regulated to the extent required by *Burger*. However, the Eighth Circuit has repeatedly held that the commercial trucking industry does constitute a "closely-regulated industry," and this Court is bound by that determination. *See United States v. Ruiz*, 569 F.3d 355, 356-57 (8th Cir. 2009); *United States v. Mendoza–Gonzalez*, 363 F.3d 788, 794 (8th Cir. 2004); *United States v. Knight*, 306 F.3d 534, 535 (8th Cir. 2002); *United States v. Parker*, 587 F.3d 871, 878 (8th Cir. 2009). Notably, unlike the hotel industry addressed in *Patel*, the trucking industry is

7

more closely tied to concerns regarding public safety due to the shared use of roadways between large commercial trucks and smaller private vehicles. The Court will not now deviate from Eighth Circuit precedent.

It is also relevant that the Eighth Circuit has upheld similar statutes in Arkansas and Iowa. *Ruiz*, 569 F.3d at 356-57; *Mendoza–Gonzalez*, 363 F.3d at 794. Moreover, the Ninth Circuit, interpreting the Missouri statute in a criminal matter, has upheld § 304.230 RSMo as constitutional on its face. *Delgado*, 545 F.3d at 1203.

Before proceeding with the *Burger* test, the Court addresses plaintiff's contention that he is not a participant in the "commercial trucking industry" and therefore is not subject to close regulation or the any lowered expectation of privacy. Although plaintiff was not a long-haul common carrier as are many of the litigants involved in the above cases, the fact that plaintiff was driving his dump trunk (and not a tractor-trailer filled with goods for sale) is not relevant to the statute or to the officers who enforce it. Plaintiff admits he held a "commercial" driver's license and that his truck was similarly registered for "local commercial" use. Section 302.010 RSMo defines "commercial motor vehicle" as "a motor vehicle designed or regularly used for carrying freight and merchandise…." Regardless of to what use plaintiff put the dump truck, the dump truck was "designed" for carrying freight and was in fact registered as a "commercial" vehicle. Plaintiff was therefore on notice that he could be randomly stopped and inspected, just as any other commercial driver would be.

Plaintiff similarly suggests that because Subsections 1 and 2 apply broadly to any

vehicles, and not just commercial vehicles,[2] that they are unconstitutional. Plaintiff, however, is admittedly a commercial driver who was driving a registered commercial vehicle at the time he was stopped by Corporal Keathley. Plaintiff therefore lacks standing to seek redress as though he had not been driving a commercial vehicle. *See Hollingsworth v. Perry*, 133 S. Ct. 2652, 2662 (2013) ("To have standing, a litigant must seek relief for an injury that affects him in a personal and individual way.").

The Court will analyze each of the *Burger* test's three prongs individually.

*1. Does the regulatory scheme advance a substantial governmental interest?* Defendants identify Missouri's interest as being in the safety of those traveling on its highways and minimizing the destructive impact of overweight vehicles on those highways. As the Missouri Supreme Court has held, "[t]hese are legitimate governmental concerns that are worthy of significant weight in a Fourth Amendment analysis." *State v. Rodriguez*, 877 S.W.2d 106, 109 (Mo. banc 1994) (upholding permanent vehicle checkpoints and noting that "[a]s we have said, commercial operators of motor vehicles have low expectations of privacy. The state's interest in highway preservation and safety are high."). Indeed, in cases involving similar Arkansas and Iowa statutes, the Eighth Circuit has held that warrantless inspections of commercial trucks advance a substantial governmental interest. *Ruiz*, 569 F.3d at 357.

*2. Are the warrantless inspections necessary to further the regulatory scheme?*

---

[2] For example, plaintiff notes that § 304.170, which is referred to in Subsections 1 and 2, explicitly mentions recreational vehicles, which typically would not constitute a commercial vehicle.

9

The language used by the *Burger* court contemplates inspections of premises such as a junkyard at issue in that case, but the question necessarily includes (for cases like this) whether suspicion-less stops are necessary to further the regulatory scheme. Defendants maintain that warrantless stops and inspections are necessary because the industry is mobile and surprise is an important component of an effective inspection regime. Unannounced inspections are essential to deterrence. *See, e.g.*, *Burger*, 482 U.S. at 710. The Fifth Circuit points out that some commercial vehicle problems may not be immediately apparent to an officer, holding that "[b]ecause of the transitory nature of the commercial trucking industry, we conclude that the need for warrantless stops and inspections is even more compelling than the warrantless inspections of automobile junkyards upheld in *Burger*." *Fort*, 248 F.3d at 481. Again, as the Eighth Circuit has already held, warrantless inspections of commercial trucks are necessary. *Ruiz*, 569 F.3d at 357.

*3. Are the rules governing inspections constitutionally adequate substitutes for a warrant?* A warrant, of course, provides notice of a search, limits the time, place, and scope of the search, and limits discretion of inspecting officers. Defendants argue, and other courts agree,[3] that the statute and its incorporated CVSA and NASI program standards are an adequate substitute for a warrant. Its reach is limited to commercial vehicles, and commercial vehicle operators are on notice of the inspection authority set

---

[3] *Parker*, 587 F.3d at 878-79 ("we have recognized that the NASIP procedures provide both the adequate notice and limited discretion required under the *Burger* analysis"); *Mendoza-Gonzalez*, 363 F.3d at 794; *Delgado*, 545 F.3d at 1203.

forth by the statute. The CVSA administers the North American Standard Inspection ("NASI") program, which sets standards for safety and uniformity and specifies what the officers must inspect at each level. As the Eighth Circuit held, the "North American Standard Inspection Program for commercial vehicles . . . adequately limits officer discretion and provides notice to truckers of the possibility of a roadside inspection." *Mendoza-Gonzalez*, 363 F.3d at 794. Although the statute "does not designate specific times during which enforcement officers may conduct inspections, as the Sixth Circuit held, '[s]uch a limitation would, of course, render the entire inspection scheme unworkable and meaningless. Trucks operate twenty-four hours a day and the officers must, necessarily, have the authority to conduct these administrative inspections at any time.'" *Ruiz*, 569 F.3d at 357 (quoting *Dominguez-Preito*, 923 F.2d at 470).

The Challenged Subsections therefore withstand plaintiff's constitutional challenge under the *Burger* test.

### B. Count II: Application of § 304.230 RSMo to Plaintiff

Plaintiff's complaint clearly states that he seeks a declaratory judgment that Corporal Keathley violated plaintiff's rights under the Fourth and Fourteenth Amendments by applying § 304.230 RSMo to stop plaintiff on June 3, 2013. Plaintiff specifically complains that his seizure --- which lasted longer than one hour --- is certainly not justified or acceptable even to the extent courts have held that the Fourth Amendment might permit limited suspicionless seizures of vehicles and/or persons. Plaintiff suggests that although § 304.230 RSMo might be used to justify checkpoints or roadblocks (which result in temporary stops), that statute cannot permit suspicionless

11

seizures performed by roving officers.

Plaintiff seeks to bring this claim under 42 U.S.C. § 1983, which provides that an individual may bring a lawsuit against a "person" who, under color of state law, deprives the individual of federal rights. State officials acting in their official capacities are not "persons" capable of being sued under 42 U.S.C. § 1983. *See Mayorga v. Missouri*, 442 F.3d 1128, 1130 n.2 (8th Cir. 2006). Plaintiff named as defendants the governor, the attorney general, and superintendent of the highway patrol in their official capacities; thus, even accepting all factual allegations as true, plaintiff has not named the proper party (Corporal Keathley) to this action, and defendants' motion for judgment on the pleadings will be granted.

Accordingly,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment on Count I and judgment on the pleadings in Count II (#10) is GRANTED.

**IT IS FURTHER ORDERED** that plaintiff's motion for summary judgment (#14) is DENIED.

**IT IS FINALLY ORDERED** that the parties' joint motion for amendment of the case management order (#26) is DENIED as moot.

Dated this __28th__ day of July, 2016.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE