UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| RONALD CALZONE, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| vs. | ) | Case No. 4:15-CV-869-SNLJ |
| SANDRA KARSTEN[1] | ) |  |
| Defendant. | ) |  |

# MEMORANDUM and ORDER

This matter is before the Court on remand from the Eighth Circuit. Plaintiff Ronald Calzone claims RSMo. § 304.230 is unconstitutional as applied to him—a farmer who occasionally operates his 56,000-pound dump truck only in the State of Missouri—because he is not a member of the closely regulated commercial trucking industry. The parties have renewed their motions for summary judgment. Because the Court finds Calzone is a member of the closely regulated commercial trucking industry, his motion for summary judgment (#14) is denied and the state's motion for summary judgment (#10) is granted.

## I.  Factual and Procedural Background

Calzone is a Missouri farmer who occasionally operates his dump truck no more than fifty miles from his farm. The dump truck is licensed with a Missouri 54,000-pound

---

[1] Superintendent Karsten is automatically substituted for her predecessor under Federal Rule of Civil Procedure 25(d).

1

local license plate that is marked with the letter F, which designates the dump truck as a farm truck. The truck does not have a U.S. Department of Transportation number on it. Calzone is not a professional truck driver, and he uses the dump truck only when transporting agricultural products or supplies to and from his farm.

In June 2013, a Missouri State Highway Patrol corporal stopped Calzone while he was driving his dump truck on the highway. The corporal told Calzone that he pulled him over because he "did not recognize the truck or the markings displayed on the vehicle" and asked to inspect it. Calzone refused, and the corporal then explained that RSMo. § 304.230 authorized him to stop commercial vehicles and inspect them whether or not he had probable cause. The corporal warned Calzone if he did not submit to an inspection, he would issue Calzone a citation. Calzone still refused, so the corporal issued him a citation for failing to submit to a commercial vehicle inspection. The Phelps County prosecutor later abandoned the action against Calzone.

Calzone then sued the governor of Missouri, the Missouri attorney general, and the superintendent of the Missouri State Highway Patrol under 42 U.S.C. § 1983. He sought a declaratory judgment that § 304.230.1, .2, and .7 are unconstitutional on their face and as applied to him. He asked for a permanent injunction against the enforcement of these provisions, one dollar in nominal damages, and costs and attorney's fees. Although the Fourth Amendment prohibits unreasonable searches and searches, not all warrantless seizures are unreasonable. In fact, warrantless inspections involving closely regulated industries are constitutional when certain conditions are met. *New York v. Burger*, 482 U.S. 691, 702–03 (1987). As such, this Court held the challenged provisions were not

facially unconstitutional, because they could be applied constitutionally to participants in the closely regulated commercial trucking industry. This Court also held Calzone's as-applied challenge must fail because he named as parties the governor, attorney general, and superintendent, instead of the corporal who pulled him over.

The Eighth Circuit affirmed this Court's conclusion that the challenged provisions are not facially unconstitutional. *Calzone v. Hawley*, 866 F.3d 866, 871 (8th Cir. 2017). It also affirmed this Court's conclusion that the governor and attorney general were improper parties for Calzone's as-applied challenge. *Id.* at 872. But the Eighth Circuit held "Calzone can sue the superintendent in her official capacity for declaratory and injunctive relief[.]" *Id.* It remanded so this Court could address the merits of Calzone's as-applied challenge. The Eighth Circuit listed two questions this Court may need to consider to resolve the as-applied challenge: (1) "whether Missouri's incorporation of the federal regulations also incorporates the exceptions for farm vehicles that are contained within those federal regulations, or whether Missouri's own exceptions at § 307.400.1(2) and .5 are exclusive" and (2) "whether a partial exemption from the federal regulations removes an operator from the realm of the closely regulated commercial trucking industry." *Id.*

## II.  Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, a district court may grant a motion for summary judgment if all of the information before the court demonstrates that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Poller v. Columbia Broad. Sys., Inc.*,

368 U.S. 464, 467 (1962). This Court must construe the facts in the light most favorable to the nonmoving party, but it need not accept a version of the events that "is blatantly contradicted by the record, so that no reasonable jury could believe it." *Marksmeier v. Davie*, 622 F.3d 896, 900 (8th Cir. 2010) (*quoting Scott v. Harris*, 550 U.S. 372, 380 (2007)).

**III.   Discussion**

Calzone makes three arguments for why the challenged subsections of § 304.230 are unconstitutional as applied to him. The Court will address each separately.

**A.    Even Though Calzone Is Not Engaged in a Business Tied to the Professional Commercial Trucking Industry, He Is Still Subject to the Commercial Motor Vehicle Regulations**

First, Calzone claims he is not subject to the Fourth Amendment's closely regulated industry exception because he is not engaged in any business tied to the commercial trucking industry. The Eighth Circuit has made clear the commercial trucking, itself, is a closely regulated industry. *Calzone*, 866 F.3d at 871. But Calzone argues he is not a professional truck driver, so he hasn't voluntarily given up Fourth Amendment rights like those who choose a career in professional truck driving.

The Court rejected this argument when first ruling on summary judgment: "Although [Calzone] was not a long-haul common carrier . . ., the fact that [he] was driving his dump trunk (and not a tractor-trailer filled with goods for sale) is not relevant to the statute or to the officers who enforce it." (#27 at 8.) This Court also observed Calzone held a "commercial" driver's license and his truck was registered for "local commercial" use. Finally, § 302.010 defines "commercial motor vehicle" as "a motor

4

vehicle designed or regularly used for carrying freight and merchandise[.]" This Court concluded "regardless of to what use [Calzone] put the dump truck, the dump truck was 'designed' for carrying freight and was in fact registered as a 'commercial' vehicle. [Calzone] was therefore on notice that he could be randomly stopped and inspected, just as any other commercial driver would be." (#27 at 8.) Neither the Eighth Circuit's opinion nor Calzone's supplemental briefing casts doubt on this holding.

Calzone relies on *United States v. Seslar*, 996 F.2d 1058 (10th Cir. 1993), for the proposition that the closely regulated industry exception does not justify the warrantless seizure of someone who was not engaged in a regulated industry. In *Seslar*, defendants were not part of the regulated class of "motor carriers," because they fell outside the statutory definition of "motor carriers." *Seslar*, 996 F.2d at 1062. Thus, the Tenth Circuit held "the closely regulated industry line of cases does not justify the warrantless search of *un*regulated persons" and reasoned that Seslar did not have the reduced expectation of privacy of persons engaged in a closely regulated industry. *Id.* at 1063.

This case does not help Calzone for at least two reasons. First, his dump truck is part of the regulated class of "commercial motor vehicles," and Calzone does not argue his truck falls outside the statutory definition. Thus, he was on notice that he could randomly be stopped and inspected, which reduced his expectation of privacy. Second, *Seslar* does not support Calzone's claim that a person must be engaged in a business tied to the closely regulated industry to actually be a part of it. Seslar simply fell outside the statutory definition of the regulated class.

Calzone's reliance on *United States v. Herrera*, 444 F.3d 1238 (10th Cir. 2006) is

5

similarly misplaced. In *Herrera*, a police officer pulled over Herrera to inspect his pickup truck. *Herrera*, 444 F.3d at 1240. "[U]nder Kansas law, 'commercial vehicles can be stopped at any time to check for compliance with . . . safety regulations.'" *Id.* at 1241 (alteration in original) (*quoting* Kan. Stat. § 74–2108(b)). The government relied on this law to justify the officer's stop, but Herrera's truck did not fall within the statutory definition of "commercial vehicle," "because it weighed 10,000 pounds, one pound short of the definition of a commercial vehicle under Kansas law." *Id.* As such, the Court held "Herrera was not engaging in a closely regulated industry and, thus, would not have had any reason to know that his truck could be subject to a random inspection." *Id.* at 1245.

Again, Calzone's truck does fall within the statutory definition of commercial motor vehicle, so *Herrera* is unpersuasive. This Court reaffirms its prior conclusion that Calzone is subject to the commercial trucking industry regulations.

**B.    Even Though Calzone is Exempt from Some Regulations, He Is Still Part of an Industry That Is Closely Regulated**

Second, Calzone seems to argue his dump truck is exempt from so many regulations that the commercial trucking industry—as it applies to him—is not "closely" regulated. He claims the state "has failed to identify even one significant set of business regulations unique to the professional commercial trucking industry to which [he] and his farm truck are subject." (#43 at 6–7.) This argument gets to the heart of the questions the Eighth Circuit noted this Court might need to consider to resolve Calzone's as-applied challenge.

6

The commercial trucking industry is regulated under both federal law and Missouri law.

### 1. Federal Regulation of Commercial Motor Vehicles

"Commercial trucking is subject to extensive federal regulation." *United States v. Delgado*, 545 F.3d 1195, 1202 (9th Cir. 2008); *see, e.g.*, 49 U.S.C. § 31142 (inspection of commercial motor vehicles); 49 C.F.R. § 391.11 (commercial motor vehicle driver qualifications); § 391.15 (disqualification of commercial motor vehicle drivers); § 395.3 (driving time for property-carrying commercial motor vehicles); § 395.8 (driver's records).

The parties agree Calzone's dump truck is also a "covered farm vehicle," 49 C.F.R. § 390.5, and the federal regulations except covered farm vehicles from certain federal and state requirements. *Id.* § 390.39. As relevant here, covered farm vehicles are exempt from any requirement relating to commercial driver's licenses; controlled substances and alcohol use testing; physical qualifications and examinations; drivers' hours of service; and inspection, repair, and maintenance. *Id.* § 390.39(a).

The parties dispute whether Calzone is exempt from federal requirements other than those listed in 49 C.F.R. § 390.39.

### 2. Missouri Regulation of Commercial Motor Vehicles

Missouri law incorporates the federal regulations for commercial motor vehicles:

> Subject to any exceptions which are applicable under section 307.400, the officers and commercial motor vehicle inspectors of the state highway patrol, the enforcement personnel of the division of motor carrier and railroad safety, and other authorized peace officers of this state and any civil subdivision of this state may enforce any of the provisions of Parts

> 350 through 399 of Title 49, Code of Federal Regulations, as those
> regulations have been and may periodically be amended, as they apply to
> motor vehicles and drivers operating in interstate or intrastate commerce
> within this state[.]

RSMo. § 390.201. The parties agree Missouri's incorporation of the federal regulations includes the exceptions for covered farm vehicles. Missouri law also explicitly makes it

> unlawful for any person to operate any commercial motor vehicle as
> defined in Title 49, Code of Federal Regulations, Part 390.5, . . . unless
> such vehicles are equipped and operated as required by Parts 390 through
> 397, Title 49, Code of Federal Regulations, as such regulations have been
> and may periodically be amended, *whether intrastate transportation or
> interstate transportation*.

*Id.* § 307.400.1 (emphasis added). The federal regulations define "commercial motor vehicle" as "any self-propelled or towed motor vehicle used on a highway in interstate commerce to transport passengers or property when the vehicle . . . [h]as a gross vehicle weight rating or gross combination weight rating, or gross vehicle weight or gross combination weight, of 4,536 kg (10,001 pounds) or more, whichever is greater[.]" 49 C.F.R. § 390.5. Calzone's dump truck does not qualify for any of RSMo. § 307.400's exceptions, but he is exempt from the Missouri commercial driver's license requirement. RSMo. §§ 302.700; 302.775(1).

Finally, "[t]he challenged subsections of . . . [RSMo.] § 304.230 authorize certain law enforcement officers to stop and inspect commercial motor vehicles for certain delineated purposes." *Calzone*, 866 F.3d at 870–71. Subsection 304.230.1 allows certain officers to stop and inspect commercial motor vehicles to determine whether they comply with the size and weight requirements as provided in RSMo. §§ 304.170 to 304.230. "Subsection 304.230.2 authorizes 'any highway patrol officer . . . to stop any

8

[commercial motor vehicle] upon the public highway for the purpose of determining whether such vehicle is loaded in excess of the provisions of sections 304.170 to 304.230.'" *Calzone*, 866 F.3d at 871 (alterations in original) (*quoting* RSMo. § 304.230.2). Subsection 304.230.7 allows certain officers "to conduct commercial motor vehicle and driver inspections . . . to determine compliance with commercial vehicle laws, rules, and regulations."

### 3. Despite the Various Exemptions, Calzone and His Dump Truck Are Still Closely Regulated

Now, the Court must decide whether Calzone and his dump truck are still "closely regulated" such that he has a lowered expectation of privacy. Without deciding exactly where the dividing line is, this Court finds Calzone's dump truck is on the closely regulated side of it.

Calzone claims the state "has failed to identify even one significant set of business regulations unique to the professional commercial trucking industry to which [he] and his farm truck are subject." (#43 at 6–7.) This Court disagrees.

While Calzone is not subject to the regulations that exempt covered farm vehicles, he is still subject to all other federal commercial vehicle regulations. Again, Missouri law incorporates the federal commercial vehicle regulations, "as they apply to motor vehicles and drivers operating in *interstate or intrastate commerce* within this state[.]" RSMo. § 390.201 (emphasis added). The Missouri General Assembly did not limit the purview of the statute to interstate commerce. Instead, it extended the federal regulations to cover commercial motor vehicles operating in both interstate and intrastate commerce.

This is clear from the text. For some reason, Calzone totally ignores the plain language that extends the federal regulations.

Similarly, RSMo. § 307.400 also applies to Calzone and his dump truck. He argues it does not because the statute adopts 49 C.F.R. § 390.5's definition—which includes the interstate commerce jurisdictional hook—definition of commercial motor vehicle. Because he does not use his dump truck in interstate commerce, Calzone argues this statute does not apply to him. But Calzone does not read far enough. Section 307.400 applies to commercial motor vehicles, "*whether intrastate transportation or interstate transportation.*" RSMo. § 307.400 (emphasis added). Again, the Missouri General Assembly did not limit the purview of the statute to interstate commerce. *See also Mo. Highways & Transp. Comm'n v. Wilsons Trucking, LLC*, Mo. Admin. 11-0742 MC, at *3 (Dec. 13, 2011) (concluding respondent violated RSMo. § 307.400, even though respondent only used the truck at issue in intrastate commerce). Calzone ignores this language and extension as well.

Finally, Calzone is still subject to suspicionless stops and inspections under RSMo. § 304.230, because his dump truck falls under Missouri's definition of commercial motor vehicle.

In light of all this, the Court finds that Calzone and his dump truck are not removed "from the realm of the closely regulated commercial trucking industry." *Calzone*, 866 F.3d at 872.

**C.    Section 304.230 Properly Limits the Discretion of Inspecting Officers**

Third, Calzone argues inspecting officers act with "unbridled discretion" in

deciding which vehicles to stop, because the Missouri State Highway Patrol "had established no standards, no guidelines, no policies that would dictate which vehicles [inspecting officers] would subject to roving, suspicionless stops[.]" (#40 at 12.) The Eighth Circuit held the challenged subsections of § 304.230 are a permissible substitute for a warrant, because "[t]hey provide notice to commercial truck drivers of the possibility of roadside inspection by a designated law enforcement officer[] and . . . limit the scope of the officer's inspections to an examination solely for regulatory compliance." *Calzone*, 866 F.3d at 871; *see also Delgado*, 545 F.3d at 1202–03. Thus, this argument fails.

## IV. Conclusion

Because Calzone is a member of the closely regulated commercial trucking industry, his motion for summary judgment (#14) is denied and the state's motion for summary judgment (#10) is granted.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff Ronald Calzone's motion for summary judgment (#14) is **DENIED**.

**IT IS FURTHER ORDERED** that defendant Sandra Karsten's motion for summary judgment (#10) is **GRANTED**.

Dated this __9th__ day of March 2018.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE